IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

---

| | |
|---|---|
| KATHLEEN PFAHLER, et al. | : CASE NO.  1:02 CV 1446 |
| Plaintiffs | : |
| | : MEMORANDUM OF OPINION AND |
| -vs- | : ORDER DENYING DEFENDANTS' |
| | : NATIONAL LATEX PRODUCTS CO., |
| | : HARRY GILL, GLASS & ASSOCIATES, |
| NATIONAL LATEX PRODUCTS | : INC. AND JAY AUWERTER'S |
| COMPANY, et al. | : MOTIONS TO LIMIT DAMAGES |
| | : |
| Defendants | : |

---

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Plaintiffs Kathleen Pfahler, R. Dean Stine, Gary L. Ramsey, and Theresa Devan filed this derivative action on behalf of the National Latex Products Company Employee Welfare Benefit Plan ("NLP Plan") against defendants National Latex Products Co. ("National Latex"), Harry R. Gill, Jr., H. Ross Gill, III, Patricia R. Gill, Glass & Associates, Inc. ("Glass"), Jay P. AuWerter, Jr., and General Electric Capital Corporation.  Plaintiffs allege that each defendant was "a fiduciary, co-fiduciary, fiduciary-in-fact or trustee of the NLP Plan or were co-conspirators who conspired to breach and did breach fiduciary duties owed to the NLP Plan and its participants."  (Docket #243).  Glass and AuWerter filed a crossclaim against NLP for indemnification.  (Docket #82).  On 22 April 2005, this Court entered summary judgment in favor of General Electric, Harry Gill, and Patricia Gill, dismissing them from the case. (Docket #235).  The Court also dismissed Mr. AuWerter's and Glass's crossclaim against NLP. Id.

On 22 April 2005, the Court ordered that the parties file "additional briefing \*\*\* about the nature of the plaintiffs' claims and, depending on the nature of the claim, the damages, which may be recoverable." (Docket #236). The parties complied and on 11 July 2005, the Court entered an order finding, in relevant part, that the plaintiffs were "confined to their individual claims for breach of fiduciary duty based on ERISA Section 502(a)(3)" and were "limited to equitable relief[.]" (Docket #243 at 3). This Court then determined that, "because the damages sought by plaintiffs are either legal in nature or not clearly traceable, plaintiffs' alleged damages are beyond the remedial scope of Section 502(a)(3)" and dismissed the case. Id.

On 14 December 2007, the Sixth Circuit Court of Appeals reversed the Court's 11 July 2005 order holding that, "plaintiffs are entitled to seek relief from NLP, Ross Gill, Glass & Associates and AuWerter pursuant to §502(a)(2), [but are] precluded from also obtaining relief under §502(a)(3)." Pfahler v. National Latex Products Co., 517 F.3d 816, 821 (6th Cir. 2007). (Docket #256). The Sixth Circuit also reversed the dismissal of Glass's and Mr. AuWerter's crossclaim for indemnification against NLP. Id.

On 10 April 2008, a telephone status conference was held during which, it was agreed that all parties would "brief the issue of damages." (Docket #262). The NLP defendants and Glass defendants each filed their damages brief on 3 June 2008. (Docket #263, #264). Plaintiffs opposed both motions on 7 July 2008 (Docket #265, #266) and the Glass defendants replied on 28 July 2008. (Docket #268). On 16 September 2008, the matter was referred to Magistrate Judge Perelman. (Docket #269). On 11 March 2009, the Magistrate Judge issued his report and recommendation

2

that the Court deny the defendants' motion to limit damages in the manner set forth in the briefing. (Docket #270).  Each defendant has objected.  (Docket #271, #272) and plaintiffs have opposed both sets of objections (Docket #273, #274).

After fully considering all of the relevant filings, the applicable law, and the parties' specific objections, this Court adopts the Magistrate Judge's report and recommendation as clarified herein.

### I.  BACKGROUND.

This action stems from the NLP defendants' and Glass defendants' alleged misuse of the assets of the NLP Plan.[1]  Also at issue are alleged misrepresentations by defendants to NLP Plan participants that outstanding health claims would be paid despite the fact that the Plan was under-funded due to the alleged misappropriation. The Court incorporates herein by reference the full recitation of the facts set forth in Pfahler, 517 F.3d at 821-23.

In their respective motions on damages, the Glass defendants and NLP defendants seek to limit the damages plaintiffs may recover if they prevail on their claim for breach of fiduciary duty.

The NLP defendants urge the Court to find that plaintiffs' damages should be capped at an amount equal to the "loss suffered by the plan due to the alleged breach of fiduciary duty."  (Docket #263 at 4).  The NLP defendants argue that when this rule is

---

[1] The NLP Plan was a self-insured welfare benefit plan that provided health care benefits to NLP employees, funded by both employee and employer contributions. Plaintiffs allege that employee contributions, paid via payroll deduction, were never paid into the Plan.  Pfahler, 517 F.3d at 823.

3

applied, "the maximum plaintiffs could recover, would be any plan contributions withheld from employees" between 22 November 1999, (the date Plan contributions, held by NLP, were last paid to the third party administrator) and 6 December 1999, (the date NLP closed its doors).  Id.  With regard to damages available due to the alleged misrepresentation(s), the NLP defendants maintain that plaintiffs may only recover compensatory damages that they "can demonstrate that they incurred due to relying upon the alleged misrepresentations[.]" (Id. at 5).  In summary, the NLP defendants argue that the damages available in this case should be capped at the amount of employee contributions made to the plan between 22 November 1999, and 6 December 1999, which plaintiffs establish were misappropriated and, measured by any medical expenses already paid, or still outstanding (not written off), that were incurred "solely due to [plaintiffs'] reliance on the alleged misrepresentation."  (Id. at 6).

According to the Glass defendants, ERISA §409(a) provides that damages are measured by the "'losses to the plan,' [and] are limited to plan assets," citing LaRue v. DeWolff, Boberg & Associates, Inc., 128 S. Ct. 1020 (2008).  (Docket #264 at 4).  The Glass defendants maintain that the only plan assets were employee contributions and thus, damages should be limited to any employee contributions that were actually misappropriated.  Id.  The Glass defendants also adopt the NLP defendants' position that the maximum damages should be "further limited to those medical expenses incurred" in reliance upon any alleged misrepresentation.  (Docket #268 at 1).

In his report, Magistrate Judge Perelman relies upon the law of trusts when considering "'losses to the plan' as defined under §1109(a)."  (Docket #270 at 8).  The

4

Magistrate Judge notes that "[u]nder the law of trusts a breach is remedied by restoring the 'plan participants to the position which they would have held but for the breach of trust.'" Id., quoting Donovan v. Bierwirth, 754 F.2d 1049, 1056 (2d Cir. 1985), citing Restatement (Second) of Trusts §205(c).[2]  Accord, LaRue at 1024 (2008), citing 1 Restatemnt (Second) of Trusts §205 and Varity Corp. v. Howe, 516 U.S. 489, 508-12 (1996).   The Magistrate Judge disagrees with the Glass defendants' interpretation of LaRue, noting that, "LaRue addressed the issue of liability, and did *not* address the question of the amount of damages to be awarded upon a finding of liability and, therefore, did *not* limit recovery to employee contributions as suggested by defendants." (Emphasis sic).  (Id. at 10).

Magistrate Judge Perelman also disagrees with the defendants' belief that Pfahler supports their argument that the plaintiffs' damages should be limited to the amount of medical expenses paid or pending that are attributable to the misrepresentation(s) by defendants. Id.  The portion of Pfahler at issue states:

> A promise that all claims would be paid would plainly affect a beneficiary's decision as to whether to seek health care.
> Had plaintiffs been aware of the possibility of their benefits' being denied, they likely would have foregone some procedures.

Pfahler, 517 F.3d at 831.   The Magistrate Judge finds that, when read in context, this language relates only to the Sixth Circuit's discussion of whether a juror could find the

---

[2] The Magistrate Judge acknowledges that Donovan is distinguishable on its facts, but finds that the law of trusts provides guidance "where the parties have not cited any cases which are on point." Id.

5

alleged misrepresentations material, and is not a limitation to recovery.[3] (Id. at 10-11).

The Magistrate Judge recommends denying both the NLP defendants' and Glass defendants' motions that attempt to limit damages in the manner suggested, and "recommends that in the event that a breach of fiduciary duty is established by the plaintiffs[,] the Donovan burden-shifting analysis [should] be applied to determine the amount of damages." (Id. at 11). According to the Magistrate Judge, under Donovan, after the plaintiffs have demonstrated a breach of fiduciary duty, they must make a prima facie case of "losses to the plan." (Id. at 9, citing Donovan, 754 F.2d at 1056). Defendants must then "establish that the losses were not caused by the breach or that the losses were less than shown by the fiduciaries[.]" Id. Finally, "any doubt or ambiguity in determining the amounts of such losses should be resolved against the fiduciaries." Id.

The NLP defendants' object to the report and recommendation (Docket #271) and argue that:

> 1. The Magistrate Judge misinterpreted the meaning and intent of ERISA §504(a), by finding that damages should be measured by anything greater than the sum of employee contributions to the Plan. The Magistrate Judge's report measures damages as losses to the participants, not to the Plan.
>
> 2. The Magistrate Judge failed to recognize that losses to the Plan can never be greater than the sum contributed by participants to the Plan that defendants did not pay into the Plan.

---

[3]The Magistrate Judge notes that, besides avoiding treatment, Plan participants could have instead "obtain[ed] coverage from other sources, chang[ed] employment to secure healthcare benefits, undergo[ne] less costly treatments, or a number of other options, all of which would require speculation." (Id. at 11).

6

>    3.   The Magistrate Judge failed to limit the plaintiffs'
>         recovery to the amount of paid or still active medical
>         bills paid in reliance upon the alleged
>         misrepresentations.

Plaintiffs oppose the NLP defendants' objections (Docket #273) and argue that there is no legal support for the defendants' definition of "losses to the plan." Plaintiffs maintain that Pfahler does not limit their damages in the manner suggested. Plaintiffs argue that Pfahler allows, at a minimum, for damages equal to the amount of the claims submitted to Stateline,[4] as well as employee contributions never paid to the Plan. See Pfahler, 573 F.3d at 837. Finally, plaintiffs argue that they are not required to show that they relied on the alleged misrepresentations to recover for medical claims made to the Plan but not paid.

The Glass defendants' object to the report and recommendation (Docket #272) and argue that:

>    1.   The Magistrate Judge erred in refusing to cap
>         damages at the amount of the plan assets; i.e., the
>         amount of employee contributions to the Plan. The
>         Glass defendants argue that their suggested measure
>         of damages is supported by both the law of trusts and
>         Pfahler.
>
>    2.   The Magistrate Judge misapplied Donovan by
>         expanding the meaning of "losses to the plan" beyond
>         plan assets as previously defined.
>
>    3.   The Magistrate Judge's remedy, allowing plaintiffs to
>         seek money in excess of plan assets, as previously
>         defined, should be construed as an equitable remedy
>         of restitution, which this court has already determined

---

[4]Stateline was a third party administrator of the Plan that replaced a former third party administrator on or about 22 September 1999. Stateline is not a party to this action.

>>is not available.

> 4. The Magistrate Judge's recommendation refuses to limit damages to medical expenses paid or still active, which were incurred in reliance upon the alleged misrepresentation(s).

Plaintiffs oppose the Glass defendants' objections (Docket #274) and argue that they are entitled to damages beyond employee contributions and, in fact, can recover for medical claims made that were not paid due to under-funding of the Plan.  Plaintiffs also argue that Donovan and the law of trusts is applicable to the instant matter and that they are seeking a remedy only on behalf of the Plan, not themselves. Plaintiffs finally argue that by asking them to demonstrate that they relied on the alleged misrepresentations when making their medical treatment decisions, they are being asked to "not only bear the burden of proving damages to the Plan, but also *** of proving all speculative defenses that defendants can theorize." (Id. at 6).

**II.  LAW AND ANALYSIS**

Before the Court are two motions asking the Court to limit plaintiffs' damages should they prevail on their claim for breach of fiduciary duty.  The Magistrate Judge has recommended that the potential damages not be limited in the manner suggested by defendants and has recommended that the amount of damages be determined according to the method set forth in Donovan, supra at 7.  Under Fed.R.Civ.P. 72(b)(3), this Court "must determine de novo any part of the magistrate judge's disposition [to which a party] has *** properly objected[.]"  The court may then "accept, reject, or modify the recommended disposition[.]" Id. Objections must be filed within 10 days of service of the Magistrate Judge's recommended disposition.  Fed.R.Civ.P. 72(b)(2).

Thus, we will consider whether: (1) a loss to the plan would be limited to a loss of plan assets, defined by defendants as employee contributions to the plan that were not paid to the plan;[5] and (2) plaintiffs' damages must be limited to medical expenses paid and/or still existing that can be attributed to plaintiffs' reliance on the alleged misrepresentations.

    1.    <u>Misappropriation</u>

29 U.S.C. §1109(a) states:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan *any losses to the plan* resulting from each such breach, and *to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary*, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

(Emphasis added).

    29 U.S.C.A. §1103(c)(1) governs the establishment of a trust to hold plan assets and states that, "assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries[.]" ERISA does not expressly define "plan assets" but the Code of Regulations defines "plan assets" in the context of an employee welfare benefit plan.

---

[5]The NLP defendant do not argue in their objections that only employee contributions between 22 November 1999, and 6 December 1999, are at issue, as they did in their motions. The Court previously found, as noted in <u>Pfahler</u>, that it was "unclear as to whether the $230,091 transferred to Stateline on 22 November 1999, included all the employee contributions made up to that point." <u>Pfahler</u>, 517 F.3d at 832. Thus, employee contributions contributed prior to 22 November 1999, might have also been misappropriated.

See 29 C.F.R. §2510.3, et seq. "'[T]he assets of the plan include amounts *** that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution to the plan.'" Pfahler, 517 F.3d at 832, quoting 29 C.F.R. §2510.3-102(a).

Based on the foregoing authority, plaintiffs' damages are not limited in the manner suggested by defendants. Employee contributions are plan assets and, if misappropriated, would constitute a loss to the plan. However, any profits or benefits that NLP received from using the employee contributions in any way other than to fund the Plan would also be a loss to the plan. This determination is not changed by the fact that the Plan no longer exists because, "[t]he remedy proposed by plaintiffs and supported by the Secretary of Labor, *** the appointment of an independent fiduciary to hold any amounts recovered from defendants in trust- would ensure that all recovery went to the Plan and not to the plaintiffs." Pfahler, 517 F.3d at 828.

Plaintiffs argue that the Pfahler court "explicitly recognized that claims liability incurred by the Plan as a result of the fiduciaries' misrepresentation was recoverable by the Plan." (Docket #274 at 3, citing Pfahler, 517 F.3d at 837). The Court does not disagree that claims made, but not paid by the Plan, might serve to quantify losses to the plan. However, plaintiffs cannot recover for these claims in excess of the sum determined to be the loss to the plan. In the portion of Pfahler, cited by plaintiffs, part V, the Court discusses the Glass defendants' motion for summary judgment related to the speculative nature of plaintiffs' damages, and holds that "there is a factual issue with respect to whether the Plan suffered damages and the amount of damages to which the

10

Plan is entitled[.]" Id.  The Pfahler Court then gives examples of these factual issues by acknowledging plaintiffs' expert Brian Lewis's report regarding the amount of claims processed and unprocessed due to under-funding of the Plan and noting that there is a question as to whether employee contributions were paid to the third party administrator or held in trust.  These examples of factual disputes in a summary judgment context do not create a new measure of damages for misrepresentation claims beyond the amount of demonstrated "losses to the plan."

    2.    Misrepresentation(s).

The Court has found no authority to support the defendants' argument that plaintiffs can only recover for medical expenses attributable to the alleged misrepresentation(s).  The Magistrate Judge correctly notes that Pfahler did not limit plaintiffs' recovery rights in this manner.  See id. at 831.  The language from Pfahler, quoted at 5-6 infra, was simply an example of when a misrepresentation might be deemed material, the second required element "[t]o establish a breach of fiduciary duty claim based upon misrepresentations regarding coverage under an ERISA plan[.]" Id. at 830.  The Plan can recover for all medical claims submitted to, but not paid by the Plan.  Plaintiffs cannot recover, however, damages in excess of the established amount of the loss to the plan, as described herein.

### III.    CONCLUSION

Having considered both the NLP defendants' and Glass defendants' motions to limit damages, this Court overrules defendants' objections and accepts Magistrate Judge Perelman's recommendation as clarified herein.  Plaintiffs are entitled to recover damages in an amount not to exceed losses to the plan as set forth herein.  Defendants

11

may present evidence to challenge plaintiffs' evidence of losses to the plan, but, "any doubt or ambiguity in determining the amounts of such losses should be resolved against the fiduciaries." Donovan, 754 F.2d at 1056.

Having determined the scope of potential damages, this case shall proceed as to liability. A telephonic status conference is set for Monday, 13 April 2009 at 1:30 p.m. before Magistrate Judge Perelman to schedule further proceedings. Plaintiffs' counsel will initiate the telephonic conference.

IT IS SO ORDERED.

                                                    /s/ Lesley Wells
                                                    UNITED STATES DISTRICT JUDGE

Date: 7 April 2009